583 So.2d 1125 (1991)
STATE of Louisiana
v.
Tommy CAGE.
No. 87 KA 2778.
Supreme Court of Louisiana.
May 6, 1991.
Dissenting Opinion June 11, 1991.
Certiorari Denied October 7, 1991.
William J. Guste, Jr., Harry F. Connick, Jack Peebles, New Orleans, for State plaintiff-appellee.
Sherry Watters, M. Craig Colwart, Professor Henry D. Gabriel, New Orleans, for defendant-appellant.
Amicus curiae, Denise LeBoeuf, New Orleans.
Dissenting Opinion of Justice Dennis June 11, 1991.
Certiorari Denied October 7, 1991. See 112 S.Ct. 211.
*1126 WATSON, Justice.
Defendant, Tommy Cage, was indicted by a grand jury for the first degree murder of Arthur Johnson in violation of LSA-R.S. 14:30. After trial by jury, defendant was convicted and sentenced to death. The conviction and sentence were affirmed. State v. Cage, 554 So.2d 39 (La.1989).
Defendant applied for a writ of certiorari to the United States Supreme Court on the ground that the reasonable doubt instruction used in the guilt phase of trial was constitutionally defective. After granting certiorari, the Supreme Court reversed the conviction and sentence, because the trial judge's instruction on reasonable doubt violated the Due Process Clause of the Fourteenth Amendment by defining reasonable doubt as "grave uncertainty," "actual substantial doubt" and lack of a "moral certainty." The case was remanded for further proceedings. Cage v. Louisiana, 498 U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

ISSUES
The issues are: (1) whether the jury instruction on reasonable doubt is subject to the harmless error analysis adopted in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and (2) if so, whether the instruction was harmless in Cage's trial.

FACTS
On April 16, 1986 at about 11:30 a.m., Arthur Johnson and Terry Kendrick were waiting at a bus stop on the corner of Desire Street and Florida Avenue in New Orleans. Both wore medallions on gold chains. While waiting, the two men observed defendant and a companion walk past them. As the bus arrived, Kendrick attempted to board but was knocked from behind onto the steps by Cage, who tried to grab Kendrick's medallion. While the two struggled over the medallion, Cage pulled a gun. Johnson ran away when he saw the gun.
After taking Kendrick's medallion, Cage chased Johnson, waving his gun. The bus driver, Lloyd Turner, and three other eye-witnesses, Reginald Lewis, Tony Jones, and Romales Nevelles, testified that Cage then stopped, took aim, and shot Johnson in the lower back. The impact of the bullet knocked Johnson forward to the ground. Cage ran up to Johnson, stopped, and aimed the gun at him. Despite Johnson's pleas, Cage shot him in the head, took his medallion and ran into the Florida Housing Project. Johnson was pronounced dead a short time later at Charity Hospital. Cage was positively identified by Kendrick, Lewis, Jones and Nevelles from photographic lineups. At trial, Cage admitted shooting the gun, but testified that he fired the first shot "just to be shooting" and then the gun "just went off again."
During the guilt phase of the trial, the judge instructed the jury on reasonable doubt. The instruction provided, in pertinent part:
"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty." Cage, 554 So.2d at 41.
The jury found Cage guilty as charged. Following a sentencing hearing, during which the quoted instruction was not repeated, the same jury unanimously recommended a death sentence. Cage appealed, alleging that the reasonable doubt instruction was prejudicial. This Court concluded *1127 that the definitions of reasonable doubt, out of context, might have confused the jury, but, in context, the definitions did not overstate the requisite degree of uncertainty. Cage, 554 So.2d at 41. Compare U.S. v. Delibac, 925 F.2d 610 (2d Cir.1991).
The United States Supreme Court held that the instruction given by the trial judge suggested a higher grade of doubt than is required for acquittal under the reasonable doubt standard; therefore, a reasonable juror could have interpreted the instruction to find defendant guilty with less proof than is required by the Due Process Clause. The Supreme Court remanded for further proceedings not inconsistent with its opinion.

HARMLESS ERROR ANALYSIS
In Chapman, the United States Supreme Court applied the harmless error analysis to a trial error which violated defendant's constitutionally guaranteed rights. To be harmless, a trial error must be harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24, 87 S.Ct. at 828.
The most recent harmless error analysis was in Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Fulminante was convicted of murdering his 11-year-old stepdaughter and sentenced to death. At trial, the state was allowed to introduce two confessions made by Fulminante. The Arizona Supreme Court held that the first confession was coerced and the prejudice of introducing that confession in evidence was not subject to a harmless error analysis. The case was remanded for a new trial without the coerced confession. Arizona v. Fulminante, 161 Ariz. 237, 778 P.2d 602 (1988). The United States Supreme Court decided that a harmless error analysis is applicable to coerced confessions, but the error in introducing Fulminante's confession was not harmless. The Arizona Supreme Court decision was affirmed.
A five person majority of the United States Supreme Court agreed that the admission of a coerced confession is a "trial error," which is subject to a harmless error analysis. Trial error occurs during the presentation of the case to the trier of fact and may be assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt.
Structural defects in the trial mechanism are not trial errors and cannot be analyzed under a harmless error standard. Structural defects include: the complete denial of counsel, as in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and adjudication by a biased judge, as in Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The entire conduct of a trial is affected by the absence of counsel for a criminal defendant, or the presence of a biased judge on the bench.
Other constitutional errors which are not subject to a harmless error analysis include: exclusion of members of defendant's race from a grand jury, Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of the right to self-representation at trial, McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); violation of the right to public trial, Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and selection of a jury with racially based exclusions, Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Each of these constitutional deprivations is a structural defect affecting the framework of the trial, rather than an error in the trial process.
This erroneous instruction on reasonable doubt was given by the trial judge to the jury during the guilt phase of defendant's trial. Under the distinction drawn by Chief Justice Rehnquist in Fulminante between trial errors and structural defects in the trial mechanism, the instruction is a trial error. As a trial error, the instruction is subject to a harmless error analysis.

WAS THE ERROR HARMLESS?
A trial error is harmless when a reviewing court is convinced that the error was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24, 87 S.Ct. at 828. *1128 The state has the burden of demonstrating that the trial error did not contribute to defendant's conviction. If a reviewing court finds that the trial record establishes guilt beyond a reasonable doubt, the interests of justice have been satisfied and the judgment should be affirmed. Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).
In Fulminante, the coerced confession was given to Anthony Sarivola, a fellow inmate acting as a paid informant for the Federal Bureau of Investigation. After Fulminante was released from prison, he also confessed to Sarivola's wife, Donna, whom he had not previously met. Although deciding that a harmless error standard applied to introduction of the coerced confession, the United States Supreme Court concluded that the state had not carried its burden of demonstrating beyond a reasonable doubt that admission of the confession did not contribute to the conviction.
The state did not carry its burden of establishing that admission of the coerced confession in Fulminante was harmless error for three reasons. First, absent the confessions, it was unlikely that Fulminante would have been prosecuted, because the physical and circumstantial evidence would have been insufficient to convict. Second, the corroborating confession given to Donna Sarivola might have been unbelievable without the coerced confession. Third, admission of the coerced confession allowed the introduction of other prejudicial evidence. The court also found that the confession may have influenced the trial judge during the sentencing phase; there was a reasonable doubt that the judge would have found an aggravating circumstance as a requisite to imposing the death sentence without the coerced confession.
In this case, the erroneous reasonable doubt instruction is a trial error subject to the Chapman harmless error analysis. That analysis "mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless." United States v. Hasting, 461 U.S. 499, 508 n. 7, 103 S.Ct. 1974, 1980 n. 7, 76 L.Ed.2d 96, 106 n. 7 (1983).
Justice Powell summarized the harmless error doctrine in Rose v. Clark:
Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. 478 U.S. at 579, 106 S.Ct. at 3106, 92 L.Ed.2d at 471.
Compare McCleskey v. Zant, ___ U.S. ___, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), which dealt with the doctrine of abuse of the writ, but recognized that a constitutional violation in a trial does not result in a miscarriage of justice where there is absolutely no doubt about defendant's guilt and defendant cannot demonstrate that the violation caused conviction of an innocent person.
At the Cage trial, the bus driver testified that he saw defendant waving a gun in his hand while chasing Arthur Johnson. Three other eyewitnesses testified that they saw defendant shoot Johnson in the lower back as well as in the head. Defendant Cage admitted firing the gun twice, although he claimed that the second shot was accidental. There was no significant evidence which would have caused reasonable doubt. Thus, the state met its burden of demonstrating that the trial error did not contribute to defendant's conviction. Because of the overwhelming evidence establishing defendant's guilt, the erroneous reasonable doubt instruction given by the trial judge during the guilt phase of trial was harmless beyond a reasonable doubt.
During the sentencing phase of Cage's trial, the trial judge instructed the jury that, before a death sentence could be imposed, it must unanimously find beyond a reasonable doubt that at least one statutory *1129 aggravating circumstance existed. The trial judge did not give an instruction regarding the meaning of reasonable doubt. The same jury that determined the issue of defendant's guilt found four aggravating circumstances and recommended the death sentence. Those aggravating circumstances were: the offender was engaged in the perpetration of armed robbery; he had been previously convicted of an unrelated armed robbery; he knowingly created a risk of death or great bodily harm to more than one person; and the offense was committed in an especially heinous, atrocious, or cruel manner.
Because the trial judge did not repeat the instruction on reasonable doubt during the sentencing phase, the jury's understanding of the phrase may have been based on the erroneous instruction given during the guilt phase of the trial. Defendant does not claim that the instruction during the sentencing phase of his trial was constitutionally defective; however, if such an argument were made, the analysis would be the same. An erroneous instruction given during the sentencing phase of a trial constitutes a trial error subject to a harmless error analysis.
At the Cage trial, eyewitnesses testified they observed defendant holding a gun in his hand while attempting to grab Terry Kendrick's gold medallion. Cage was also seen waving a gun in his hand while chasing Arthur Johnson. After being shot once, Johnson was executed while pleading with Cage for his life. Cage then took Johnson's medallion.
Ernest Brown testified that he was robbed at gunpoint by Cage on April 10, 1986. Yvette Johnson testified that she was robbed at gunpoint by Cage on April 15, 1986, and that he was convicted of first degree robbery for the offense.
Considering the entire record, there was sufficient evidence for the jury to find beyond a reasonable doubt the existence of at least one of the aggravating circumstances. In contrast to Fulminante, there is no indication that the trial error had any influence on defendant's sentence. Accordingly, the trial error did not contribute to defendant's sentence and was harmless beyond a reasonable doubt.

CONCLUSION
The erroneous reasonable doubt instruction given by the trial judge during the guilt phase of defendant's trial is a "trial error" subject to the Chapman harmless error analysis. Viewing the record as a whole, the jury had sufficient evidence to find defendant guilty beyond a reasonable doubt of the murder of Arthur Johnson and to find the existence of a statutory aggravating circumstance beyond a reasonable doubt. The erroneous instruction by the trial judge did not contribute to defendant's conviction or sentence. Accordingly, the erroneous instruction was harmless beyond a reasonable doubt. The conviction and sentence of defendant are affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
CALOGERO, C.J., and DENNIS, J., dissent and assign reasons.
LEMMON, Justice, concurring.
Under Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), the Court declared that the test to determine whether a trial error is harmless beyond a reasonable doubt is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction". Id. at 86-87, 84 S.Ct. at 230. In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court required "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict", noting that it was adhering to the Fahy standard. Id. at 24, 87 S.Ct. at 828. This court has consistently adhered to this standard. State v. Gibson, 391 So.2d 421 (La.1980); State v. Hamilton, 478 So.2d 123 (La.1985). I write separately only to emphasize that a harmless error analysis requires more than excising the evidence or other error and reviewing the remainder of the record for sufficiency under Jackson v. Virginia, 443 *1130 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
As the majority points out, there was no credible evidence whatsoever in this case which might have created a reasonable doubt as to any essential element of the crime in the guilt phase or as to any aggravating circumstance found by the jury in the penalty phase. Therefore, there is no "reasonable doubt that the error complained of did not contribute to the verdict". Chapman v. California, 386 U.S. at 24, 87 S.Ct. at 828.
CALOGERO, Chief Justice, dissenting.
Because of his right to trial by jury, defendant is entitled to have the jury decide his fate, properly instructed that they must find him guilty only if proven so beyond a reasonable doubt. The jury in this case was not properly so instructed, we have been told by the United States Supreme Court.[1] Can this Court now say that there was sufficient evidence for a jury to find defendant guilty beyond a reasonable doubt, and his crime to have been attended by one of the statutorily required aggravating circumstances? [In the guilt phase of the trial it takes only one unconvinced juror to prevent a finding of guilty; in the penalty phase of the bifurcated trial it takes only one unconvinced juror to force a penalty of life imprisonment rather than death by execution.] Can this Court now say that it did not matter that the jury was not properly told what they were in need of most to perform their duty, the proper standard on the degree of proof required of the State, to guide them in their decision?
If we can say that, then this Court has become the jury in this case, and we would just as soon acknowledge that this defendant and others in similar circumstances have a constitutional right to trial by jury except if the trial judge does not afford them one.
The majority here in effect predicts that because of their recent Fulminante case (Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), which dealt with the admission of a coerced confession), the United States Supreme Court will agree that this error in the jury charge on reasonable doubt can be harmless (and was harmless). I doubt that the United States Supreme Court will. I don't believe that the United States Constitution can be construed so as to permit such a result. And if it can, I would hold, notwithstanding, that Louisiana's counterpart provisions, the right to a trial by jury (La. Const.Art. I, § 17 (1974)), due process of law (La.Const.Art. 1, § 2 (1974)) and the statutory provision on the instruction on reasonable doubt (La.C.Cr.P. art. 804) should not be similarly interpreted. For these reasons, I dissent.
DENNIS, Justice, dissenting.
I respectfully dissent.

1. A Reasonable Doubt Instructional Error Cannot Be Harmless
This case presents the question whether the harmless-error standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applies to a jury instruction that violates the Fourteenth Amendment and the principle of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) because it fails to clearly and effectively inform each reasonable juror that the State must prove every element of the criminal offense with which the defendant is charged beyond a reasonable doubt.
The United States Supreme Court has not resolved this question in a square holding, but it has given clear signals that such an error cannot be harmless. First, the high court has imposed on all courts an obligation to exercise close scrutiny of errors that would dilute the reasonable-doubt principle; the pervasiveness and potential impact upon jurors' judgment of an error relieving or lightening the prosecution's burden of proof clearly indicates that the *1131 error cannot be harmless. Second, a clear majority of the Supreme Court has said that the error cannot be harmless in dicta and separate opinions. Third, in explaining when and how a jury instruction creating a conclusive presumption may be considered harmless, the court has distinguished that type of error from jury instruction relieving, diluting or lightening the State's burden of proving every element of a criminal offense beyond a reasonable doubt and clearly indicated that the latter cannot be harmless.
In remanding the present case to us for further proceedings not inconsistent with its opinion, the Supreme Court identified and explained the constitutional errors that this court had failed to detect in the trial court's reasonable-doubt jury instruction, as follows:
In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985). The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave" as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.
Cage v. Louisiana, 498 U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
In dealing with a constitutional error relieving, diluting or lightening the State's burden of proving a criminal accused's guilt beyond a reasonable doubt, the court has issued admonitions instructive here. "In the administration of criminal justice, courts must guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976); In re Winship, 397 U.S. at 364. Moreover, the Supreme Court has indicated that this standard of proof imposes a dual obligation on the State. For the prosecution has the duty not only to produce evidence of the accused's guilt but also to convince the particular jury of his guilt beyond a reasonable doubt. Taylor v. Kentucky, 436 U.S. 478, 483, n. 12, 485, 98 S.Ct. 1930, 1934, n. 12, 1934-35, 56 L.Ed.2d 468 (1978). Consequently, when a trial court gives a jury an instruction that, in effect, informs the jury that it may convict the defendant despite the state's failure to prove its case beyond a reasonable doubt, reversal is required no matter how overwhelming or convincing the evidence. If the jury was given a diluted or diminished standard by which to measure the state's proof there is no way that a reviewing court can determine if the particular jury would have been convinced to convict had it been correctly instructed to use the higher standard of proof beyond a reasonable doubt.
The Supreme Court and its members writing separately have plainly indicated many times that a jury instruction which fails to clearly and effectively inform each reasonable juror that the state must prove each essential element of the crime beyond a reasonable doubt cannot be harmless error. In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Court stated that its "cases have indicated that failure to instruct a jury on the necessity of proof of guilt beyond a reasonable doubt can never be harmless error [and, thus,] a defendant whose guilt was actually proved by overwhelming evidence would be denied due process if the jury was instructed that he could be found guilty on a mere preponderance of the evidence." Jackson v. Virginia, 443 U.S. at 320, n. 14, 99 S.Ct. at 2790, n. 14. As inferential support for these statements, the Jackson court cited Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. *1132 1930, 56 L.Ed.2d 468 (1978); Cool v. United States, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), cases in which the Supreme Court reversed convictions, without performing any harmless error analysis, because of a failure to give an instruction on the presumption of innocence and because of an instruction substantially reducing the prosecution's beyond-a-reasonable-doubt burden of proof by creating an artificial barrier to the consideration of relevant defense testimony. In Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) the court distinguished "a presumption [which] does not remove the issue of intent from the jury's consideration ... from other instruction errors that prevent a jury from considering an issue" and cited Jackson v. Virginia as "suggesting that failure to instruct a jury as to the reasonable doubt standard cannot be harmless." Rose v. Clark, 478 U.S. at 580, n. 8, 106 S.Ct. at 3107, n. 8.
In Connecticut v. Johnson, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), eight justices indicated their opinion that a constitutionally erroneous reasonable-doubt instruction could never be treated as harmless error, although they disagreed as to whether a constitutionally erroneous conclusive presumption instruction could be harmless. A plurality of the Court, Justices Blackmun, Brennan, White and Marshall, were of the view that a conclusive presumption, held unconstitutional under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because it lessened or shifted the state's burden of proof beyond a reasonable doubt, could never be treated as harmless error. From the plurality opinion, which equated an instruction of a conclusive presumption on the issue of intent with a directed verdict for the state on that issue, it may reasonably be inferred that these four justices would conclude that an instruction which diminished the prosecution's burden of proof to less than proof beyond a reasonable doubt on all issues is automatically reversible and not subject to the harmless error rule. Although Justice Powell and three other dissenters disagreed with the plurality on the conclusive presumption issue, in their dissenting opinion, they indicated a belief that an example of "an instruction that can never be harmless" is "an instruction that fails to inform the jury that it must find guilt beyond a reasonable doubt...." Connecticut v. Johnson, 460 U.S. at 97, n. 6, 103 S.Ct. at 983, n. 6.
Justice Scalia, concurring in Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), expressed a view similar to that of Justice Powell and the dissenters, but perhaps even closer to that of the plurality, in Connecticut v. Johnson, on whether a Sandstrom-type instruction could be harmless. Justice Scalia stated that "the use of conclusive presumptions could be harmless error only in those `rare situations' when `the reviewing court can be confident that [such an] error did not play any role in the jury's verdict.'" Carella v. California, 109 S.Ct. at 2423; Connecticut v. Johnson, 460 U.S. at 87, 103 S.Ct. at 977. As examples of the "rare situations" in which the conclusive presumption could be harmless, Justice Scalia offered instances in which the defendant either "admitted or was acquitted of the charge affected by the presumption instruction." Carella v. California, 109 S.Ct. at 2423. From his opinion, it would appear that Justice Scalia is strongly of the view that a fundamental constitutional error cannot be harmless unless the reviewing court can with confidence determine that the jury found the facts necessary to support the conviction beyond a reasonable doubt independently of and without being affected by the error. Accordingly, it is reasonable to conclude that Justice Scalia would think that an instruction diluting the reasonable doubt standard of proof on all issues could not be harmless error because a reviewing court could not say with any confidence that the jury had actually found any fact supporting the conviction beyond a reasonable doubt.
Inferentially, the rationale of the Court's holding in Rose v. Clark, supra which incorporates the principles of Justice Powell's dissent in Connecticut v. Johnson, indicates that the trial court's failure to clearly instruct the jury on the reasonabledoubt *1133 standard cannot be harmless; that in such a case a reviewing court cannot determine that the jury applied the correct standard of proof because the jury was never given such an instruction; and that a reviewing court's harmless error affirmance of a criminal conviction based on such a defective or diluted reasonable-doubt instruction would amount to nothing more than an appellate review of the sufficiency of the evidence and a substitution of the reviewing court's judgment for the jury's beyond a reasonable doubt findings.
In Rose v. Clark, the Court held that the Chapman harmless error standard applies to an erroneous instruction that all homicides are presumed to be malicious in the absence of rebutting evidence. In essence, the Court's rationale was as follows: (1) Ordinarily, a lay jury will adhere to the instructions given to it by the trial court; (2) The malice instruction in this case violated the respondent's right to have his guilt proved beyond a reasonable doubt; (3) But, apart from the erroneous malice instruction, "the jury was clearly instructed that it had to find respondent guilty beyond a reasonable doubt as to every element of both first- and second-degree murder." Rose v. Clark, 478 U.S. at 579, 106 S.Ct. at 3107; (4) When the jury was instructed to presume malice from predicate facts, it still had to find the existence of those facts beyond a reasonable doubt; (5) In a case in which the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury, the erroneous instruction is simply superfluous; (6) Accordingly, in such a case the Chapman harmless-error standard may be applied to determine whether such an error was harmless beyond a reasonable doubt.
On the other hand, the Court in Rose v. Clark recognized again, as it had done in Chapman, that "some constitutional errors require reversal without regard to the evidence in the particular case", Rose v. Clark, 478 U.S. at 577, 106 S.Ct. at 3105, "some errors necessarily render a trial fundamentally unfair", Id., and that without "basic protections a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair." Id at 577-578, 106 S.Ct. at 3106. For example, the Court explained "harmless error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury ... [because] `a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelming the evidence may point in that direction.'" Id at 578, 106 S.Ct. at 3106, quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 572-573, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). This rule of law "stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases." Rose v. Clark, 478 U.S. at 578, 106 S.Ct. at 3106; See Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Thus, the Court concluded, "[w]here that right is altogether denied, the state cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." Rose v. Clark, 478 U.S. at 578, 106 S.Ct. at 3106.
The Clark Court, using the rationale set forth above, expressly declared that the erroneous presumption of malice instruction was not equivalent to a directed verdict for the state and pointedly distinguished such an error from "`other instructional errors that prevent a jury from considering an issue' ... Cf. Jackson v. Virginia, (suggesting that failure to instruct a jury as to the reasonable doubt standard cannot be harmless)." Rose v. Clark, 478 U.S. at 580, n. 8, 106 S.Ct. at 3107, n. 8, citing Connecticut v. Johnson, 460 U.S. at 95, n. 3, 103 S.Ct. at 982, n. 3 (Powell, J., dissenting) (citations omitted).
In other words, the Court concluded that an erroneous instruction unconstitutionally requiring a jury to presume an element of the crime is subject to the Chapman harmless error analysis only when (a) the jury was clearly instructed that it had to find *1134 the defendant guilty beyond a reasonable doubt as to every element of the crime, and (b) the evidence establishes the predicate facts so conclusively that no rational jury could find them without also finding the presumptive fact. In such a case, a reviewing court can determine that the jury found all of the elements of the crime beyond a reasonable doubt without relying on the erroneous presumption. Accordingly, if the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction it may decide that the error was harmless. But the Court in Rose v. Clark, plainly limited its holding to the situation in which a jury, having been clearly and correctly instructed on reasonable doubt, rationally could not have found the predicate facts without also directly inferring the presumptive fact therefrom and thereby treating the erroneous instruction on presumption as "simply superfluous". Rose v. Clark, 478 U.S. at 581, 106 S.Ct. at 3107. Moreover, the Court made clear that "other instructional errors" which would prevent a jury from considering any issue on the merits such as "a failure to instruct a jury as to the reasonable-doubt standard" could not be harmless or subjected to the Chapman standard. Id. at 580, n. 8, 106 S.Ct. at 3107, n. 8.
The Chief Justice, writing for himself and four associate justices, concluded, in Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that the admission of an involuntary confession at trial is subject to the Chapman harmless error analysis. In doing so, that five justice majority distinguished "trial errors", which it deemed susceptible to harmless error analysis, from "structural defects in the constitution of the trial mechanism", which the majority conceded cannot be so analyzed and therefore cannot be harmless.
Under the Chief Justice's trial error-structural defect analysis, which was severely criticized by Justice White and three other justices, Arizona v. Fulminante, 111 S.Ct. at 1253-57 (White, J., dissenting), a "trial error" is one which (a) occurred during the presentation of the case to the jury, and (b) may be quantitatively assessed in the context of other evidence presented in order to determine its admission was harmless beyond a reasonable doubt, i.e., the appellate court simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt. On the other hand, a structural defect in the constitution of the trial mechanism is one which: (a) defies analysis by "harmless error" standards; (b) obviously affects the entire conduct of the trial from beginning to end; (c) affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself; (d) deprives the defendant of a basic protection without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.
Using this analysis, the Chief Justice concluded that the admission of an involuntary confession was a "classic trial error", primarily because he believed that an appellate court can simply review the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless, and likened it to other constitutional errors to which the Court had applied the harmless error analysis. Arizona v. Fulminante, 111 S.Ct. at 1263.
By the same token, the Chief Justice decided that the error of admitting an involuntary confession was markedly different from "structural defects in the constitution of the trial mechanism" because they affect the very framework of the trial and its entire conduct, deprive a defendant of a basic protection of the reliability in the determination of guilt or innocence, and defy analysis by harmless error standards. As examples of "structural defects" he cited the total deprivation of the right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); the denial of the right to a trial conducted by an impartial judge, Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); unlawful exclusion of members of the defendant's race from a grand jury, Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. *1135 617, 88 L.Ed.2d 598 (1986); deprivation of the right to self-representation at trial, McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); and denial of the right to a public trial, Walker v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Arizona v. Fulminante, 111 S.Ct. at 1265.
Applying these precepts, it is evident that a trial court's failure to give a clear, unambiguous instruction to the jury that the state must prove each essential element of the crime beyond a reasonable doubt constitutes a "structural error" and therefore cannot be harmless. Manifestly, failure to give a clear, unambiguous reasonable-doubt instruction affects the reliability of the guilt or innocence determination by the jury, skews the framework and entire conduct of the trial, and defies analysis by harmless error standards. Because society has judged that it is significantly worse for an innocent man to be found guilty of a crime than for a guilty man to go free, "beyond a reasonable doubt" has been adopted as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt. Therefore, if the jury is instructed that it may use a lesser measure of persuasion, the margin of error and the reliability of the determination will be drastically altered. Should the jury decide to convict by using a measure of persuasion similar to that of a preponderance of the evidence or by clear and convincing evidence, the nature of the proceeding will have been transformed into something resembling that of a civil case.
Such a deprivation clearly should not be classified as a mere error in the trial process because the mistake affects much more than the jury's finding on a discrete factual issue which the appellate court may isolate and compare with the remainder of the evidence against the defendant. When an instructional error affects a single distinct factual issue, or when evidence relating to such an issue is erroneously admitted, but the jury has been clearly and properly instructed on the reasonable-doubt measure of persuasion, a reviewing court may be able to separate the affected matter from the remainder of the evidence in the case and determine that there was no reasonable possibility that the error caused the jury to disobey its instruction to find the essential elements of the crime only when the state proves each beyond a reasonable doubt. But if the jury is instructed to use a lesser measure of persuasion in guaging the degree of its belief as to the proof of every essential element of guilt it is impossible for an appellate court to winnow out the inaccuracy and find that the jury performed its proper function and actually held the State to its constitutional burden of persuasion as to every essential element of the crime. Indeed, the only kind of review an appellate court possibly can perform in this situation is the type that a majority of my brethern have carried out in this case: they have reviewed the sufficiency of the evidence and determined that it is so overwhelming that any reasonable juror would have voted to convict the defendant of first degree murder even if he had been clearly and properly instructed to apply the reasonable-doubt measure of persuasion. This court cannot constitutionally affirm the conviction on the basis of such a review, however, because our constitutions guarantee that no defendant may be convicted of a serious crime without the right to have a jury find all of the essential elements of guilt beyond a reasonable doubt. The defendant was deprived of this right because the jury which found the defendant's guilt was not given a constitutionally adequate instruction on reasonable doubt. The ordinary view is that a jury adheres to the instructions, Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) (plurality opinion), and there is no reason to believe that the "lay jury will know enough to disregard the judge's bad law if in fact he misguides them." Bollenbach v. United States, 326 U.S. 607, 613-614, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Consequently, my majority colleagues have in effect simply substituted their own finding that the State proved the essential elements of guilt beyond a reasonable doubt for the unconstitutional jury determination to this effect. *1136 This clearly is a function that this court cannot constitutionally perform; the defendant has been judged guilty by the wrong entity.

2. The Chapman Harmless Error Standard Was Misapplied
That a reasonable-doubt instructional error of constitutional dimension pervades the case, defies Chapman harmless-error analysis and has been misclassified by the majority as a "trial error" emerges in sharp relief when the majority confronts the problem of applying the harmless error rule to the present case. After rehearsing selected passages from Chapman and other cases, my colleagues do not seriously attempt to apply the actual holding of Chapman but instead retreat quickly into what closely resembles a Jackson v. Virginia sufficiency of evidence review. They do not pause to demonstrate how they know that this particular jury applied the reasonable-doubt measure of persuasion even though the Supreme Court has held it was never correctly instructed on this measure. Nor do they attempt to explain why there is no reasonable possibility in this case that the instructional error may have contributed to the jury's returning a verdict of first-instead of second-degree murder.
In conducting a proper harmless error analysis, courts focus not solely upon the sufficiency of the evidence indicating defendant's guilt, but also consider the effect of the error at the trial. The appellate court does not play the role of the jury in substituting its opinion based upon the evidence in the record as a whole, but rather its duty is to focus upon the erroneously admitted evidence or error and determine whether beyond a reasonable doubt that error had no impact on the ultimate finding of guilt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (The "beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."); T. Stacy & K. Dayton, Rethinking Harmless Constitutional Error, 88 Colum.L.Rev. 79 (1988). Following these teachings, this court in the past has refused to deem harmless a violation simply because of overwhelming evidence in the record indicating that defendant is guilty beyond a reasonable doubt. State v. Herman, 304 So.2d 322 (La.1974); State v. Michelli, 301 So.2d 577 (La.1974).
The majority opinion therefore does not even approach a correct application of the harmless error standard because it fails to focus upon the effect of the improper instruction in this case. Instead, the majority conducts a Jackson v. Virginia and perhaps a de novo review of the evidence to determine defendant's guilt. In discussing the error in the guilt phase, the majority contends, "[b]ecause of the overwhelming evidence establishing defendant's guilt, the erroneous reasonable doubt instruction given by the trial judge ... was harmless beyond a reasonable doubt." (emphasis added). Moreover, in discussing the penalty phase the majority holds that "[c]onsidering the entire record, there was sufficient evidence for the jury to find beyond a reasonable doubt the existence of at least one of the aggravating circumstances." (emphasis added).
In State v. Gibson, 391 So.2d 421, 426 (La.1980), the court stated that "our state constitution prohibit[s] the weighing of evidence by this Court in criminal cases". The court noted that despite the amendment to La.Code Crim.P. art. 921, which gave reviewing courts greater leeway in reversing criminal convictions, our state constitution, nevertheless, still extends appellate jurisdiction only to questions of law in criminal matters. La. Const. 1974, art. V, § 5(C). Moreover, the Court, in Gibson, noted that despite the fact that "an error shall be deemed harmless unless it `affect[s] substantial rights of the accused'", this court "constitutionally, however, still may not act as a surrogate jury; it is not free to substitute its determination of what the jury, in the absence of the error, would or should have decided in place of the jury's actual verdict." Id. at 426-27. "Although the [harmless error] standard requires a reviewing court to consider the evidence in order to determine if there is a reasonable possibility that the error had prejudicial effect, it does not permit a court to substitute for the verdict its judgment of *1137 what the jury would or should have decided in the absence of error." Id. at 427; accord Monagham, Harmless Error and the Valid Rule Requirement, 1989 Sup.Ct.Rev. 195, 200 ("special concern exists that judicial toleration of harmless error is not a license for judicial invasion of the issue-resolving province constitutionally reserved to the jury."); Note, Reasonable Doubt: To Define, or Not to Define, 90 Colum.L.Rev. 1716, 1735, n. 141 (quoting Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 2422, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring)) ("Error cannot be cured by an appellate court's determination that the record evidence unmistakably established guilt, for that would represent a finding of fact by judges, not by a jury. As with a directed verdict, `the error in such a case is that the wrong entity judged the defendant guilty.'") The majority in this case, has completely ignored all of these teachings.
Even though the constitutionally erroneous reasonable-doubt instruction defies proper application of the harmless-error standard and should never be considered harmless error for the reasons stated above, a diligent attempt to apply the Chapman analysis in the present case would have raised more doubts and concerns than does the majority's sufficiency of evidence review. Although the case was not close on the question of guilt or innocence of a homicide, it was closer on whether a responsive lesser verdict of second degree murder could have been returned in the guilt phase and whether a life sentence could have been recommended in the penalty phase. The estimation of the defendant's chances of avoiding the death penalty had the jury been correctly instructed on reasonable doubt must be elevated further when it is considered that the case was tried in a judicial district in which capital murder prosecution juries historically have returned lesser verdicts in approximately 30.3% of the cases, recommended life sentences in approximately 54.5%, and condemned the defendants to death in only approximately 12.4% of the trials. Brief for Appellee, Appendix to Sentence Review Memorandum at 1-7, State of Louisiana v. Tommy Cage, No. 87 KA 2778 (La.1991).

3. The Instructional Error Cannot Be Harmless Under State Law
Moreover, the reversal and remand by the Supreme Court should cause this court to reevaluate its decisions in this case in light of our state constitutional, statutory and jurisprudential law. This court has never before held that our state constitution affords less protection to individual human rights than the federal bill of rights. It is now well settled that state courts may interpret their constitutions to provide different and more extensive rights than those provided by the federal constitution. Williams, In The Supreme Court's Shadow: Legitimacy of State Rejection of Supreme Court Reasoning and Result, 35 S.C.L.Rev. 353, 354, n. 2 (1984) and authorities cited therein. Specifically, it has been recognized that state courts are free to interpret their own constitutions and laws to permit fewer applications of the harmless-error rule than does the federal rule. See Connecticut v. Johnson, 460 U.S. at 81, n. 9, 103 S.Ct. at 974 n. 9; PruneYard Shopping Center v. Robins, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967).
Prior to the majority's decision on first appeal in this case this court had held that the failure of a trial court to instruct the jury clearly and unambiguously that the State must prove the essential elements of guilt beyond a reasonable doubt was constitutional error and automatically reversible. State v. Vessell, 450 So.2d 938, 948 (La. 1984) ("[t]he [reasonable doubt] instruction in the instant case is not substantially equivalent to the statute, but is in direct opposition to the statutory provision that the jury may find reasonable doubt from the lack of evidence adduced at trial ... [s]uch an instruction constitutes reversible error".); State v. McDaniel, 410 So.2d 754, 756 (La.1982) (an instruction on reasonable doubt directing the jury that reasonable doubt "must be such a doubt that would give rise to a great uncertainty" and that "it must be one that would make you feel *1138 morally uncertain as to the defendant's guilt" constituted reversible error); State v. Mack, 403 So.2d 8, 11 (La.1981) ("we decline to sanction jury instructions which substitute misleading and unclear statement for the direct statutory language of C.Cr.P. 804 ... [a] correct understanding of reasonable doubt is essential in every criminal jury trial."); c.f. also, State v. Surrency, 148 La. 983, 88 So. 240, 244 (1921) ("In view of the uncertainty of the charge [on defendant's burden of proof as to insanity] ... the verdict and sentence must be set aside."); State v. Moffett, 127 La. 760, 53 So. 982, 983 (1911) ("Where an instruction on a material point misstates the law, prejudice to the accused will be presumed."); State v. Ardoin, 49 La.Ann. 1145, 22 So. 620, 621 (1897) ("a merely inaccurate or incomplete instruction [on the alibi defense] may be cured by subsequently supplying the defect or accurately stating the law, an absolute misstatement of the law is not cured by a correct statement elsewhere in the charge.") In short, the above cases are more representative of our long-standing traditional approach to harmless error than the recent decision of this court. See generally, G. Pugh, Louisiana Evidence Law: Selected Commentary from the Louisiana Law Review and Pertinent Legislation 550-565 (1974); Comment, Harmless Constitutional ErrorA Louisiana Dilemma?, 33 La.L.Rev. 82 (1972); P. Hebert, The Problem of Reversible Error in Louisiana, 6 Tul.L.Rev. 169 (1932). Furthermore, the application of the Chapman harmless error standard to the deprivation of the accused's right to an adequately instructed jury's determination of guilt beyond a reasonable doubt is inconsistent with La.Code Crim.P. art. 921, which implicitly requires reversal when error affects substantial rights of the accused and with the limited plain error rule that has evolved in this court's decisions in death penalty cases. State v. Thomas, 427 So.2d 428, 433 (La.1982) (on rehearing); State v. Sonnier, 379 So.2d 1336, 1371 (La.1980) (on rehearing); See State v. David, 425 So.2d 1241 (La.1983); State v. Watson, 423 So.2d 1130 (La.1982); State v. Culberth, 390 So.2d 847 (La.1980). There is persuasive authority to the effect that a plain error cannot be harmless. See Wright, Federal Practice and Procedure: Criminal 2d § 856, at 344 (1982).
Even if the Supreme Court were to disregard all of the indications that seem to require the classification of a reasonable-doubt instructional error as "structural error" and instead designate it as a "trial error" subject to federal harmless error standards, there are valid policy considerations that should lead this court to reject the federal rule as an appropriate one to follow in determining whether the error can be harmless under our state constitution and under the administration of justice within our state judicial system. As Justice Brennan observed, "unmistakeably, a high state court judge and a United States Supreme Court Justice must often look at the same case with different eyeglasses." W. Brennan, State Supreme Court Judge Versus United States Supreme Court Justice: A change in Function and Perspective, 19 U.Fla.L.Rev. 225, 227 (1966). Supreme Court federal constitutional interpretations failing to recognize or enforce rights may be inappropriate guides for state constitutional interpretations for many reasons: (A) A Supreme Court decision interpreting the Fourteenth Amendment must operate in all areas of the nation and hence it invariabley represents the lowest common denominator. Alderwood Assocs. v. Washington Envntl. Coun., 96 Wash.2d 230, 635 P.2d 108 (1981). Federalism concerns and the Fourteenth Amendment's state action requirement impose well known limitations on Supreme Court constitutional analysis. Williams, supra at 390. (B) The typical state court system occupies a different institutional position and performs a different judicial function from its federal counterpart, Williams, supra at 397, because: (i) The relationship between state supreme courts and state legislatures is fundamentally different from the Supreme Court's relationship to Congress, (ii) The state court's function is different from the Supreme Court's, and state courts may be viewed as closer to state affairs and more accountable than federal courts. Id. at 400 (iii) Some state *1139 constitutional rights differ qualitatively from federal constitutional rights, either expressly granting or being interpreted as affording certain affirmative rights. Id. at 401.
Several provisions of the Louisiana constitution would seem to call for less liberal use of the harmless error device and more scrutiny and relief for violations of constitutional rights. See, e.g., La. Const. Art. I, § 16 (Presumption of innocence); Art. I, § 19 (Right to judicial review of imprisonment or deprivation of rights based on a complete record of all evidence); Art. I, § 22 (Right to access to courts and adequate remedy for deprivation of rights); Art. V, § 5(A) (Judicial "reach down" and rulemaking powers); Art. V, § 11 (Certification of questions of law by Courts of Appeal to Supreme Court); See also, La. Code Crim.P. art. 921 ("A judgment or ruling shall not be reversed by an appellate court because of any error ... which does not affect substantial rights of the accused.")
Considering factors such as these, I believe it is a mistake to think that the review of criminal cases by this court and our court of appeals is simply a minature replication of Supreme Court review. Because of the myriad of criminal cases administered by locally elected judges and officials within our state court system, the central role in assuring reliability that the reasonable-doubt measure of persuasion plays in all criminal trials, see, e.g., La.Code Crim.P. art. 804, and the many differences between our court system and the federal courts, it is grevious error to conclude that the failure to instruct a jury clearly that the state must prove each essential element of a defendant's guilt beyond a reasonable doubt can be harmless error not affecting substantial rights of the accused under our State constitution and laws.
NOTES
[1] This Court originally affirmed defendant's conviction and sentence, finding that while part of the jury instruction taken out of context may seem to overstate the requisite degree of uncertainty and confuse the jury, reasonable persons could understand the definition of "reasonable doubt" from the jury instruction taken as a whole. State v. Cage, 554 So.2d 39 (La.1989).