JAMES C. GULOTTA, Judge Pro Tern.
The defendant, Eddie Jarrell, was charged by bill of indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury found the defendant guilty as charged, he was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant now appeals.
In the early morning hours of August 12, 1987, Officer Marjorie Powell of the New Orleans Police Department received a call of a shooting in the 1300 block of Esplanade Avenue in New Orleans. She and her partner arrived at the scene and found the victim lying in the street. The victim, identified as Keith Daggons, subsequently died of multiple gunshot wounds.
Sergeant Sam Lee of the New Orleans Police Department testified that he was flagged down at approximately 1:50 a.m. by several women who told him that they had just witnessed a shooting. These women testified at trial and all stated that, earlier that evening, they were at a bar called Boss Place. As they were leaving the bar at approximately 1:15 a.m., the victim, who they knew by the nickname “Head,” asked the women for a ride home. The victim got in the car and was driven to his sister’s house on Villere Street. As the victim started to get out of the car, another car pulled up behind the first car and flashed its bright lights. According to the eyewitnesses’ testimony, two men got out of the other car. These two men were later identified as the defendant and John Meyers, who was also charged with the victim’s murder.
As the victim was stepping out of the car, the women heard him say, “You don’t need that gun.” The eyewitnesses testified *180 that, at that point, the defendant shot the victim. The driver of the ear carrying the women then drove off with the victim hanging from the car door. The victim fell out of the car in the 1300 block of Esplanade near Villere Street. As the women drove off, they heard several more shots. Some of the women testified that, after the victim fell out of the car and was lying in the street, they saw the defendant and Meyers shoot the victim again.
These eyewitnesses then drove toward the nearest police station and flagged down Sergeant Lee. After hearing about the shooting, Sergeant Lee decided to drive the women in his police car to the scene of the shooting. As they approached the scene, the women spotted a car which they recognized as that in which the victim’s assailants were travelling. Sergeant Lee then called for assistance and stopped the other car. After ordering the men out of the car, the eyewitnesses to the shooting identified the defendant and Meyers as the men who shot the victim. Two guns and a bag of bullets were retrieved from the suspects’ car. At that time, both the defendant and Meyers were arrested. After being advised of their rights, both men told police that the victim had shot at them first and that they shot back in self-defense. All of the women who were at the bar with the victim and who witnessed the shooting testified that he did not have a gun in his possession that night.
Both the defendant and John Meyers testified they had been at the Boss Place bar earlier that evening and had gotten into an argument with the victim over a woman. According to the defendant and Meyers, the victim threatened them during the argument. The defendant and another defense witness testified that the victim had a gun in his possession at the bar.
According to the defendant and Meyers, they left the bar with two other men, one of whom was driving the defendant’s car. As they were driving down Villere Street, they had to stop because another car was stopped in the middle of the street blocking traffic. Both the defendant and Meyers testified that the victim got out of the car in front of them, walked toward their car, pulled out a gun and shot at them inside the car from a distance of about six feet but missed the car completely. After this first shot, the defendant claims that he got out of the car and shot back at the victim in self-defense. Meyers claims that he never got out of the car. Both men said they then drove off while the victim was lying in the street but that they later drove back to the scene and retrieved the victim’s gun so as to prevent him from shooting at them again. The defendant denied shooting the victim again while the victim was lying in the street.
In his only assignment of error, the defendant argues that he is entitled to a new trial because the trial court erred in defining “reasonable doubt” to the jury. In Cage v. Louisiana, — U.S. —, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the United States Supreme Court found that a jury charge defining reasonable doubt which used the phrases “grave uncertainty,” “actual substantial doubt,” and “moral certainty,” could have led a reasonable juror to interpret the instruction “to allow a finding of guilt based on a degree of proof below that required by the due process clause.” [1] The Court held that this instruction suggested a higher grade of doubt than is *181 required for acquittal under the reasonable doubt standard. The United States Supreme Court reversed the judgment of the Louisiana Supreme Court affirming the defendant’s conviction and sentence and remanded the case to the Louisiana Supreme Court.
On remand from the United States Supreme Court, the Louisiana Supreme Court held that the erroneous reasonable doubt jury instruction is a “trial error” subject to the harmless error analysis enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). State v. Cage, 583 So.2d 1125 (La.1991). The Court founded its decision on the recent United States Supreme Court holding in Arizona v. Fulminante, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Court, in Fulminante, distinguished between “trial errors,” which occur during the presentation of the case to the trier of fact, and “structural defects,” which affect the entire conduct of the trial. The Court held that trial errors are subject to a harmless error analysis, whereas structural defects in the trial mechanism cannot be analyzed under a harmless error standard. After conducting a harmless error analysis in Cage, the Louisiana Supreme Court concluded that the erroneous reasonable doubt instruction in that case was harmless beyond a reasonable doubt “because of the overwhelming evidence establishing defendant’s guilt.” Cage at 1128.
The questionable jury charge in the present case reads, in pertinent part:
If you have a reasonable doubt as to any fact or element necessary to prove the defendant’s guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence shows a probability of doubt—of guilt, rather, yet if it does not prove such guilt beyond a a (sic) reasonable doubt, you must acquit the accused. However, this doubt must be a reasonable one, that is, one that is founded upon a real tangible, substantial basis and not upon mere whim, fancy, or guesswork. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence or the lack thereof.
A reasonable doubt is not a mere possible doubt, it is an actual or substantial doubt. It is a doubt that a reasonable man would' seriously have. What is required is not an absolute or mathematical certainty, but a moral certainty.
Because this jury charge is nearly identical to the one condemned in Cage v. Louisiana, the holdings of the United States Supreme Court and the Louisiana Supreme Court in the Cage case control the present case. [We note that, unlike State v. Anthony Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), there was a contemporaneous objection to the reasonable doubt jury charge in this case.] Therefore, this court must now decide whether the erroneous jury charge requires reversal of the defendant’s conviction or whether this error was harmless.
Before a federal constitutional error can be held harmless, the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24, 87 S.Ct. at 828. The Court in Chapman further emphasized that the burden of showing that a constitutional error is harmless is heavier than the burden of showing that an ordinary trial error is harmless. Thus, Chapman articulated a rigorous standard for determining whether a presumptively prejudicial error could, in fact, be deemed harmless.
The harmless error analysis “mandates consideration of the entire record pri- or to reversing a conviction for constitutional errors that may be harmless.” U.S. v. Hasting, 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). At trial in this case, six eyewitnesses testified that they saw the defendant shoot the victim seyeral times without provocation. Although there were a few minor inconsistencies between their stories, their testimony was remarkably consistent on all important aspects of the crime.
On the other hand, the defendant’s explanation of the events surrounding the death of the victim is completely implausible. *182 The defendant claims that he was sitting in the front passenger seat of a vehicle when the victim attempted to shoot him from a distance of six feet yet missed the entire vehicle. The defendant then claims that he opened the glove compartment, retrieved a pistol, opened the door, stepped out of the car and began shooting at the victim. It is highly unlikely that the victim would fire one shot and then remain motionless as the defendant retrieved his weapon and began to shoot at the victim.
The defendant’s statements regarding the events after the shooting are equally implausible. According to the defendant, the victim was lying in the middle of Esplanade Avenue still holding a weapon after being shot four times and thrown from a speeding car after being dragged several blocks. It is highly unlikely that the victim still would have been able to hold onto a gun at that point.
The defendant attempts to explain why no gun was found near the victim when the police arrived by stating that the four men left the scene but returned to see if the victim was still alive. After ascertaining that the victim was still alive, John Meyers allegedly took the gun from the victim’s hand, took the bullets out of the gun to see how many shots had been fired, reloaded the gun and threw the spent shells next to the victim. Again, this version of events is completely implausible and in direct contradiction of the testimony of six eyewitnesses who said the victim was unarmed and that the defendant and Meyers shot him several times without provocation.
Furthermore, the testimony of Dr. Paul McGarry, a pathologist with the Orleans Parish Coroner’s office, corroborates the version of events presented by the State’s witnesses and discredits the testimony of the defense witnesses. After performing an autopsy on the victim, Dr. McGarry determined that the victim could not have been facing his assailants when shot contrary to the testimony of the defendant and Meyers. Dr. McGarry also testified that the placement of the victim’s wounds was inconsistent with the victim raising a gun.
Therefore, because the evidence of defendant’s guilt in this case is overwhelming, we conclude that the erroneous reasonable doubt jury charge was harmless error beyond a reasonable doubt. Accordingly, the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.

. The entire relevant portion of the "reasonable doubt” instruction in Cage is as follows:
"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant’s guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. IT MUST BE SUCH DOUBT AS WOULD GIVE RISE TO A GRAVE UNCERTAINTY, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. IT IS AN ACTUAL SUBSTANTIAL DOUBT. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a MORAL CERTAINTY.” (Emphasis added by U.S. Supreme Court.)