362 So.2d 1358 (1978)
STATE of Louisiana
v.
Norris HENDERSON and Clarence Henderson.
No. 61525.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 19, 1978.
*1360 Loyola Law School Clinic, William J. O'Hara, III, Supervising Atty., Kathleen O'Leary, Student Practitioner, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
The defendants were charged with committing the second degree murder of Betty Jean Joseph in violation of La. R.S. 14:30.1. After a joint trial by jury each defendant was found guilty as charged and sentenced *1361 to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years. On appeal the defendants rely upon numerous assignments of error comprising ten arguments.
As nineteen year old Betty Jean Joseph was riding her bicycle to summer school in New Orleans three men drove up in a burgundy Chevrolet automobile with a black vinyl top and tried to force her into the car. An eyewitness who saw this incident wrote down the car's license number, and reported the events to the police by telephone. As he returned from making his call he heard gunshots and saw one of the men pointing a gun at Ms. Joseph who was falling. All of the assailants then fled in the Chevrolet. While lying on the ground waiting for an ambulance the victim made oral statements to two school officials who arrived several minutes after the shooting. The victim was taken to the hospital and died about 12:00 p. m. the same day. The burgundy Chevrolet driven by the assailants was found by the police shortly after the shooting. A fingerprint found on the car matched the ink impression taken from one of Clarence Henderson's fingers. Because the eyewitness was not asked to identify the assailants at trial, Ms. Joseph's statement to the school officials assumed crucial importance.
ARGUMENT NO. 1 (Norris Henderson Assignment No. 4) (Clarence Henderson Assignment No. 5)
These assignments raise the question of whether a statement by the victim of a shooting is admissible as an "excited utterance" exception to the hearsay rule where (1) the declaration was made by a fatally wounded victim during a period of ten to twelve minutes following the shooting; (2) the utterance was made in response to several general, non-suggestive questions; (3) the statement went beyond a description of the exciting event and dealt with past facts; and (4) the statement could be viewed as self-serving because it identified as one of her assailants a person the victim believed to have been responsible for her brother's death.
After receiving reports of a disturbance near Cohen Senior High School about 7:30 a.m. on July 24, 1974, Reynaud Alexander, a school administrator, immediately investigated and found Betty Jean Joseph lying wounded on the sidewalk about one block from the school building. In response to his inquiry of "what had taken place," she replied that two brothers named Henderson, one of whom she identified as Norris Henderson, and a third person had shot her after attempting to pull her off a bicycle. After further questions, the victim indicated that one of her assailants was a person who was supposed to have been imprisoned after she testified against him in connection with the slaying of her brother. Alexander Brumfield, the principal of Cohen Senior High School, arrived at the victim's side shortly after Mr. Alexander and heard substantially all of her statements. These declarations by Betty Jean Joseph were made between the time of the shooting and the arrival of an ambulance ten to twelve minutes after Mr. Alexander came upon the scene.
Outside the jury's presence the trial judge heard evidence concerning the utterances by the victim at the location of the shooting as well as testimony relating to later statements she had made in an ambulance and at a hospital. After referring to authorities cited by the prosecution relating to excited utterances, the trial judge ruled that evidence pertaining to the statement made at the scene of the crime was admissible but that testimony concerning the later utterances would be excluded because the victim was then no longer in an excited state.
Because the testimony by Alexander and Brumfield was evidence of an out-of-court statement by the deceased Betty Jean Joseph, and because her statement was offered as an assertion to show the truth of matters asserted therein, and thus rested for its value upon the credibility of the out-of-court asserter, their testimony was hearsay evidence. State v. Martin, 356 So.2d 1370 (La.1978). Hearsay evidence is inadmissible except as provided by statute, *1362 La. R.S. 15:434, or by the traditional common law hearsay exceptions. State v. Smith, 285 So.2d 240 (La.1973).
One of the traditional common law hearsay exceptions recognized by this Court is the exception for certain statements made under the influence of a startling event. Formulations of the exception differ, but all courts agree on two basic requirements. There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Smith, supra; see, C. McCormick, Evidence, § 297 at 704 (2d ed. 1972).
Many factors enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor. In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Several additional factors which may indicate that the statement was the result of reflective thought, but which do not automatically justify exclusion, are as follows: Evidence that the statement was self-serving or made in response to an inquiry; Expansion of the excited utterance beyond a description of the exciting event into past facts or the future; Proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. See, State v. Smith, 285 So.2d 240 (La.1973); C. McCormick, Evidence, § 297 at 705, et seq. (2d ed. 1972); G. Pugh, Louisiana Evidence Law, at 515 (1974), at 208 (Supp.1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969).
Applying these factors and requirements in the instant case, we conclude that the evidence reasonably supports the trial judge's factual determination that Betty Jean Joseph was at the time of the offered statement under the influence of an exciting event. Ms. Joseph had been attacked by three men and shot with a firearm. Although she was unaware that her wounds were fatal, Ms. Joseph had experienced events clearly startling enough to deprive her of reflective thoughts. The time interval between the events and the statement could not have been more than fifteen minutes, not long enough for her emotional upset to diminish considering the ferocity of the attack and the severity of her injuries. Ms. Joseph was completely incapacitated from the time of the shooting until her death and did not perform any tasks requiring reflective thought during this time. It is true that her statement could be considered self-serving since it implicated the person whom she believed had killed her brother; also, her statement alluded to the past trial and incarceration of one assailant, and her statement was given in response to a few non-leading questions, such as, what happened? and, who did it? However, the trial judge evidently concluded that the ambivalent suggestions that she engaged in a reflective thought process were outweighed by the factors indicating a disruption of her normal capacity for reflective and fabricative thought. Under the circumstances of the case, the trial judge's decision was a reasonable and responsible exercise of judgment. The fact that the trial judge referred to legal authorities concerning excited utterances before ruling and distinguished the initial statement from later statements made in an ambulance and at the hospital, which were excluded on the ground that the declarant had calmed down and was no longer under the influence of the startling events, inspires further confidence in his decision.
This argument does not present reversible merit.
ARGUMENT NO. 2 (Norris Henderson Assignment No. 1) (Clarence Henderson Assignment No. 4)
After the jury was empanelled and before the first witness was sworn defense *1363 counsel informed the judge that they had learned the State possibly would attempt to introduce an out-of-court statement by the deceased victim, Betty Jean Joseph. Attorneys for the defendants then moved that the State be ordered to furnish them with any record within its possession or knowledge of prior convictions of the victim, Betty Jean Joseph. The trial judge denied the motion apparently for the reason that he did not think the out-of-court statement of the deceased victim, if admissible, would be susceptible to impeachment. In his per curiam the trial judge stated that his ruling was also based upon the prematurity of the motion. However, the record does not reflect that defense counsel were so apprised at the time of the ruling. Consequently, it was reasonable for them to assume that their objection to the denial of the motion was properly preserved, and it was not necessary that the motion be renewed later in the trial.
The primary question presented by these assignments, therefore, is whether the declarant of an excited utterance is open to impeachment and discrediting in the same way as witnesses who testify in court. Although we have found no precedent in Louisiana or elsewhere for deciding the issue, we see no reason why impeachment should be disallowed in this instance.
It is well settled that introduction of another type of out-of-court statement, the dying declaration, opens the declarant to impeachment and discrediting, so far as such a process is feasible, since the dying declaration is in effect a testimonial statement. Thus, impeachment by bad testimonial character is allowable, or by conviction of a crime, or by prior or subsequent inconsistent statements. 5 J. Wigmore, § 1446 at 307-08 (Chadbourn rev. 1974); B. Kliks, Impeachment of Dying Declarations, 19 Ore.L.Rev. 265 (1940); Comment, Dying Declarations in Louisiana Law, 22 La.L. Rev. 651 (1962); Annotation, Impeaching or Discrediting Dying Declarations, 16 A.L.R. 411 (1922).
Because the excited utterance also is in effect a testimonial statement, its introduction likewise should make the declarant susceptible to impeachment and discrediting in the same way as other witnesses, so far as such a process is feasible. Impeachment of an excited utterance by conviction of a crime is certainly feasible and should be allowed.
Accordingly, the defense request for the prior conviction records of the deceased victim constituted a specific and relevant request for evidence materially favorable to the accused. The trial judge, therefore, fell into error in not requiring the prosecutor to respond to the specific request of the defense by stating whether the State had knowledge or possession of any record of convictions of the victim, and, if so, by not requiring the prosecutor to furnish them to defendant or submit them to the court for a determination as to whether the defendant was entitled to this material. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Harvey, 358 So.2d 1224 (La.1978); State v. May, 339 So.2d 764 (La.1976); cf. State v. Falkins, 356 So.2d 415 (La.1978).
In accordance with the procedure established in Agurs, May and Harvey, this case will be remanded to the trial court for it to determine (1) if there was a suppression of the existence of conviction records of the victim, and, if so, (2) whether the material suppressed would upon its evaluation in the context of the entire record create a reasonable doubt as to either defendant's guilt. Should the trial court find that such a reasonable doubt exists after its evaluation, a new trial will be required. If the trial court finds there was no suppression of material which should have been disclosed, or if it finds, after an evaluation as described, there is no reasonable doubt as to either defendant's guilt, the convictions and sentences will be affirmed, subject to review by this Court on appeal.
ARGUMENT NO. 3 (Norris Henderson Assignment No. 3) (Clarence Henderson Assignment No. 7)
During trial defense counsel orally requested a subpoena duces tecum ordering *1364 the production of a police department press release issued to the New Orleans newspapers which resulted in news stories stating that after being shown photographs Ms. Joseph identified as one of her attackers a person then in the state penitentiary, and further ordering the State to produce any photographs shown to Ms. Joseph.
In response to the request for photographs the prosecuting attorney stated in open court that no photographs had been shown to or identified by the victim, and that these facts could be verified by the investigating officers who were present or under subpoena. No attempt was made by defense counsel to question the investigating officers on this subject. The trial judge indicated in his per curiam that he took no further action because it was apparent that no photographs were shown or identified. Because of defense counsel's apparent acceptance of the prosecuting attorney's statement in open court to this effect, we conclude that the failure by the trial judge to act further did not constitute error.
In his per curiam the trial judge indicated that the defense was not entitled to the police department press release requested because defense counsel had not properly designated the request as a motion for exculpatory evidence. The trial judge recognized that "if said press releases and other documents did contain names of witnesses favorable to the . . . defendants and were withheld from the defense by the prosecutor and/or the New Orleans Police Department, they would certainly fall within the classification of exculpatory evidence." Although defense counsel styled the motion as a subpoena duces tecum it apparently was clear to the judge that in fact defendants had made a request for exculpatory evidence.
Considered in this light, the defense request for the press release, which possibly contained evidence of the victim's mistaken identification of a person incarcerated in the penitentiary as one of her assailants, constituted a specific and relevant request for evidence materially favorable to the accused. For the same reasons that the victim's prior convictions would be admissible for the purpose of impeachment, evidence of the victim's misidentification of a prison inmate as one of her assailants would be admissible to discredit her excited utterance implicating the defendants. See, 5 J. Wigmore, Evidence, § 1446 at 307-08 (Chadbourn rev. 1974).
Accordingly, upon remand the trial court is directed to determine if there was a suppression of press releases leading to evidence that would create a reasonable doubt as to the guilt of either of the defendants when considered in the context of the entire record. The trial court is further directed to take the appropriate action indicated by its findings as outlined in our preceding discussion of the assignments related to possible suppression of the conviction record of the victim.
ARGUMENT NO. 4 (Norris Henderson Assignment No. 7)
Defendant Norris Henderson assigned as error the trial judge's exclusion from evidence of a letter which the defendant contends was written by his stepmother and would corroborate his alibi that he was in California on the date of the murder. Since the letter was written evidence of an out-of-court statement by the stepmother, offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter, the letter was hearsay evidence. See, State v. Martin, 356 So.2d 1370 (La.1978). C. McCormick, Evidence, § 246 at 584 (2d ed. 1972). Hearsay evidence is inadmissible except as provided by statutory or traditional common law exceptions. La. R.S. 15:434; State v. Smith, 285 So.2d 240 (La.1973). Defendant Norris Henderson has not informed us of any applicable exception, and we are aware of none which would allow introduction of the letter into evidence.
This assignment is without merit.
ARGUMENT NO. 5 (Both defendants' Assignment No. 14)
This assignment follows defendants' timely objections to the trial court's refusal *1365 to give a special charge orally requested by the defendants after argument and the court's charge to the jury. The request was merely that the court "give a charge to the jury with reference to identification." Oversight was the only reason suggested by defense counsel for not having made the request in writing before argument.
Louisiana Code of Criminal Procedure Article 807, in pertinent part, provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court."
Where the necessity for the special charge arises after argument has begun it may be an abuse of discretion to refuse it on the ground that the request is not timely. State v. LeBlanc, 297 So.2d 433 (La. 1974). In the instant case defendants do not contend that the necessity for the charge arose after argument had begun or explain why they could not have requested it at the proper time. Accordingly, the requested charge was one which could be received or rejected in the court's discretion after argument has begun, and the court's refusal to give the charge was not an abuse of its discretion.
This assignment is without merit.
ARGUMENT NO. 6 (Both defendants' Assignment No. 11)
Although defendants concede that the trial court's charge relating to the motive for commission of a crime was fair and legally correct, defense counsel assign error on the ground that the evidence affords no support for a finding that either defendant had a motive for the killing. The record reveals, however, that defense counsel elicited testimony from a state witness on cross-examination that the victim stated that she had testified against one of her assailants in a previous criminal prosecution. Since the victim identified the defendants as two of her assailants in her excited utterance, there was evidence which tended to show that the defendants, as brothers, had a motive to retaliate against the victim for her testimony against one of them.
This assignment is without merit.
ARGUMENT NO. 7 (Norris Henderson Assignment No. 8) (Clarence Henderson Assignment No. 13)
In these assignments defendants contend that the trial court erred in refusing to sustain their objections to alleged prejudicial statements made by the prosecutor in closing and rebuttal arguments. We have reviewed each of the allegedly prejudicial comments by the State and do not find that they are of the character which would warrant a reversal of defendants' convictions. As this Court has consistently held, a verdict will not be overturned on the basis of improper argument unless the Court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. See, State v. Crumholt, 357 So.2d 526, 530 (La.1978).
This assignment is without merit.
ARGUMENT NO. 8 (Both defendants' Assignments Nos. 9, 10 and 12)
These assignments refer to the trial court's refusal to receive a requested special charge and to defendants' objections to the general charge.
The trial judge's per curiam states that the requested special charge was rejected because, among other reasons, it was requested orally rather than in writing. However, the record of the trial does not contain any statement by the trial judge indicating that he based his ruling upon the form of the request. He entertained numerous oral requests and objections by the defendants at the same time as this one, and amended the general charge in response to some of them. Accordingly, it appears from the record that the trial judge in fact dispensed with the requirement that requested special charges be in writing and *1366 tacitly agreed to consider such instructions as orally proposed.
Defense counsel requested that the court either read Louisiana Code of Criminal Procedure Article 804[1] in its entirety to the jury or include within its general charge a statement that the defendants are to be given "the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case." The trial court denied the request on the ground that it was included in the general charge. La. C.Cr.P. art. 807.
The trial court's general charge failed to instruct the jury in a straightforward manner that the defendants were entitled to the benefit of every reasonable doubt based on the lack of evidence in the case. The court's instructions included, however, statements to the effect that the defendants were entitled to benefit from reasonable doubt based upon a finding that the evidence was "unsatisfactory" upon any point essential to a finding of guilt;[2] and that the jury as exclusive judges of the facts must decide which facts had been proved and which facts had not been proved.[3]
Although the statutory expression more clearly and directly supplies the essential ingredient of the general charge, the instructions given by the trial court substantially complied with the legislative intent of Article 804. Our approval of the trial court's formulation, however, is limited to the particular charge given within the context of the particular instant case. It would have been preferable for the trial court to have read the exact language of Article 804 to the jury, and future use of the general charge used in the instant case could easily result in reversible error. See, State v. Gibbs, 355 So.2d 1299 (La.1978).
Defense counsel further objected to the general charge on the ground that it instructed the jury not to go beyond the evidence for doubts to acquit but failed to admonish the jury that it must likewise confine itself to the evidence in order to convict.[4] It would have been more evenhanded, and therefore preferable, for the court to have included in its general charge a prohibition against the consideration of extrinsic evidence to convict the defendant. Nevertheless, the charge objected to was immediately accompanied by this instruction: "You must not resort to extraneous facts or circumstances in reaching your verdict." Moreover, the court's instructions began by stating that a defendant is not *1367 required to prove his innocence and that the burden is on the state to prove his guilt beyond a reasonable doubt. This requirement was repeated several times, once coupled with the instruction that guilt must be established by legal and sufficient evidence, and followed by admonitions that the jury must receive its evidence from the witnesses and disregard any statement by the attorneys not substantiated by the sworn testimony. Taken as a whole, the general charge did not sanction conviction of the defendants on the basis of extraneous evidence.
Defendants' final objection to the instructions contends that the trial court should not have attempted to define "reasonable doubt" for the jury because this concept is "subjective" and "inherent in the mind of each individual." The argument is without merit because the trial court is specifically authorized by law to define "reasonable doubt" and give further charges upon it. La.C.Cr.P. art. 804.
These assignments do not present reversible error.
ARGUMENT NO. 9 (Norris Henderson Assignment No. 2) (Clarence Henderson Assignment No. 1)
We have previously determined that Louisiana Code of Criminal Procedure Article 784 is applicable to the criminal courts in Orleans Parish, State v. Hoffman, 345 So.2d 1 (La.1977), and thus there was error in calling prospective jurors in the order their names appeared on a list submitted by the jury commissioner rather than by lot in open court. However, in Hoffman we ruled that our construction and reconciliation of Louisiana Code of Criminal Procedure Articles 409.1 and 784 would only have prospective application to cases in which a jury panel was selected after Hoffman became final (April 26, 1977) except for cases that had been submitted to this Court for decision by April 26, 1977 (this appeal was lodged on February 2, 1978). Therefore, Hoffman has no application to the instant case.
ASSIGNMENT OF ERROR NO. 6 (Clarence Henderson)
Defendant Clarence Henderson assigns as error the trial court's refusal to grant his motion for a directed verdict after the State had presented its case. Under Louisiana Code of Criminal Procedure Article 778 a motion for acquittal is not authorized in a jury trial.
Nevertheless, because the defendant filed a motion for new trial on the ground that the evidence was insufficient to sustain the verdict we will treat this assignment as one taken from the denial of the motion for new trial. A review of the record indicates there was reasonable evidence presented by the State to support the verdict. A witness to the incident testified that he saw two men trying to force Ms. Joseph into a burgundy and black Chevrolet. The license plate number he noted was identical to that of the burgundy Chevrolet found by police with the defendant's fingerprint. The excited utterance of the victim indicated that a brother of Norris Henderson had been one of the assailants.
This assignment of error is without merit.
For the reasons assigned, defendants' convictions and sentences are affirmed but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial herein and reserving the defendants' rights to appeal from any adverse ruling by the trial court.
AFFIRMED CONDITIONALLY AND REMANDED.
SUMMERS, J., concurs in part and dissents in part. I agree the conviction should be affirmed, but I do not agree to the remand or the decision on Assignments 2 or 3.
DIXON, J., dissents.
NOTES
[1] La.C.Cr.P. art. 804 provides:

"A. In all cases the court shall charge the jury that:
"(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
"(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
"(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
"The court may, but is not required to, define `the presumption of innocence' or `reasonable doubt' or give any other or further charge upon the same than that contained in this article.
"B. When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be."
[2] "If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendants' guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty."
[3] "You are the exclusive judges of the facts. You are to find from the evidence which facts have been proved and which facts which have not been proved."
[4] In the absence of the previously discussed accompanying instructions which state that the defendant is to be given the benefit of reasonable doubt if the evidence is "unsatisfactory" and that it is the jury's duty to decide which facts have not been proved, this charge "is patently erroneous and should not be given." State v. Gibbs, 355 So.2d 1299, 1301 (La.1978).