KLEES, Judge.
Defendant was charged by bill of indictment on January 15, 1976 with first degree murder, a violation of R.S. 14:30. Defendant was tried by a twelve member jury on April 6, 1976 and found guilty as charged. The court granted defendant a new trial on *1289 May 3, 1976. After a second trial on May 26, 27, 1976, the twelve member jury found defendant guilty of second degree murder. On June 2, 1976 defendant was sentenced to life imprisonment at hard labor. The trial court granted defendant a second out of time appeal on October 22, 1990 pursuant to an order of the U.S. District Court for the Eastern District of Louisiana.
Several versions of the circumstances of the victim’s death were presented at trial. John Ford testified that he was working at Prater Swimming Pool on Dreux Street on August 3, 1974. Ira Bodere was speaking with Edward Johnson when the two men began arguing. Bodere hit Edward Johnson in the face. Ford walked away and began walking around the perimeter of the pool. When he reached the opposite end of the pool, Ford heard shooting. He saw Leonard Johnson walking across the street toward the pool, shooting. Ford saw Richard McClarity approach Bodere as he (Bo-dere) lay on the ground. McClarity, appeared to be attempting to lift Bodere. However, McClarity fell to the ground. When Ford reached the area again, Ira Bodere was on the ground and Leonard Johnson was standing near Bodere. Ford did not notice Edward Johnson nearby. At that point, Leonard Johnson clicked the trigger of the pistol at Ford two or three times but no bullets were discharged. Leonard Johnson then exited the park, went across the street and left in a car with Edward Johnson. Ford further stated he did not see McClarity or Bodere with a gun that night, and he himself did not have a gun.
Ira Bodere described the incident in question as follows: He approached John Ford and Edward Johnson, who were talking, and asked if they had a cigarette. Edward Johnson said “we don’t smoke.” Bodere then asked Ford if he had a cigarette, to which Ford replied “no.” At that point, Edward Johnson approached Bodere, told him they had no cigarettes and began cursing him. Johnson looked as if he were going to hit Bodere, so Bodere hit Johnson in the face first, with his fist. At that point, Leonard Johnson exited the car in which he had been sitting. Leonard Johnson approached with a pistol in his hand, he yelled something at Bodere and then shot at him. Although the shot missed him, Bodere fell to the ground, hoping Leonard Johnson would leave. Instead, Leonard and Edward Johnson both began kicking and beating Bodere. Leonard Johnson then shot Bodere in the back of the hip. At that point, the Johnsons walked away down the side of the pool, and Bodere continued to lay there. Ford told Bodere to stay there and walked away. A few minutes later Richard McClarity approached, placed his arm around Bodere and tried to help Bodere to his car. When Edward and Leonard Johnson noticed Bodere and McClarity leaving, they again approached. Leonard Johnson fired two shots at the men, from a distance of approximately two feet. McClarity and Bordere fell to the ground. Leonard Johnson then turned his gun to Ford, clicked the gun and said, “If I had more bullets, I would kill you, too.” Bodere further testified that at no point during the entire incident did Edward Johnson have a gun.
Edward Johnson testified as to the events of the evening as follows: He and his brother Leonard returned to the pool (having been there earlier) in a car borrowed from Nathaniel Knight. Edward went to the pool to talk to John Ford while Leonard waited in the car. While he was speaking with Ford, Edward Johnson noticed Ira Bodere, Richard McClarity and another man standing behind a car. Bo-dere walked to the side of Edward Johnson and asked him and Ford for a cigarette. Johnson responded that he did not smoke and had no cigarettes, then turned away from Bodere to continue his conversation with Ford. Suddenly and unexpectedly, Johnson was struck in the mouth, causing the loss of his front teeth and swelling and bleeding of his mouth and gums. Although he did not see Bodere hit him, Edward Johnson presumed it was Bodere since Bodere was the only other person nearby. Johnson further stated he was hit several times and then “went out,” unable to fight back because he was taken by surprise. Edward Johnson further testi *1290 fied: while he was semi-unconscious he heard shots. He later regained consciousness at his sister’s house. He only learned what had happened through what others had told him. He spoke with Leonard two days after the incident. Edward stated, over the prosecutor’s objection, that Leonard told him he (Leonard) jumped out of the car when he saw Bodere hit Edward with an object he thought was a pistol yelled to Bodere, “stop hitting my brother.” Bodere turned to Leonard and shots were fired. Leonard then drove Edward to their sister’s house where Edward regained consciousness.
Edward Johnson denied having kicked or cursed Bodere and denied speaking with Ford after having been hit. He admitted that he was charged with first degree murder in this case and that he had pleaded guilty to a lesser charge and was sentenced to the time he had already served.
Edward further stated that although he had learned that his brother had been arrested for the shooting of McClarity, he did not call the police or district attorney to inform them his brother Leonard had acted in an attempt to protect him. Edward further admitted that he had previously testified about this matter. He stated he did not relate his brother’s version of the incident at that time because no one asked him.
Dr. Monroe Samuels, who performed the autopsy on McClarity, testified by stipulation as an expert in the field of pathology. He stated the autopsy revealed the cause of death was a bullet wound which penetrated the back of the right shoulder, the lung, liver, stomach and intestine, resulting in a massive hemorrhage. The decedent also had a second, superficial bullet wound to the left arm. In response to the prosecutor’s questioning, Dr. Samuels agreed that it was possible that the bullet which wounded the decedent’s left arm could possibly have first passed through the chest of a man with his arm around decedent then entered the decedent’s left arm. The doctor also agreed it was possible for the decedent to have bent down after receiving the injury to the left arm, at which point the second bullet could have entered the decedent’s right shoulder.
Dr. Mark Juneau testified the he examined Ira Bodere at Charity Hospital on April 8,1975 because Bodere’s complaint of pain in his hip. Dr. Juneau operated on April 10, 1975, at which time he removed a bullet from Bodere’s hip. He determined the point of entry to be the back of the hips at the buttocks. Dr. Juneau stated the path of the bullet indicated the bullet would necessarily have traveled upward if Bodere had been standing and downward if Bodere had been lying on the ground at the time the wound was inflicted.
Officer Allen G. Tidwell testified by stipulation as an expert in the field of firearms identification. Tidwell identified the three bullets (one removed from Bodere by Dr. Juneau and two removed from McClarity by Dr. Samuels) as having been fired from the same .45 calibre revolver. Tidwell testified that the bullets could not have been fired from different weapons.
Defendant argues that the trial court judge committed reversible error (a) in failing to instruct the jury, as required by C.Cr.P. art. 804, that a reasonable doubt as to defendant's guilt could arise out of the lack of evidence, and (b) failing to instruct the jury that the state must negate defendant’s claim of self-defense beyond a reasonable doubt.
(a) Reasonable doubt arising out of lack of evidence.
LSA-C.Cr.P. art. 804 provides in relevant part that “the court shall charge the jury that ... [i]t is the duty of the jury ... to give the defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence in the case.”
In the instant case, the judge instructed the jury in relevant part as follows:
You are prohibited by law and your oath from going beyond the evidence to seek for doubts upon which to acquit the defendant, but must confine yourselves strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to extraneous facts or circumstances in reaching your ver- *1291 diet. That is, you must not go beyond the evidence to find facts or circumstances creating doubts, but must restrict yourselves to the evidence that you heard on the trial of this case.
You are the exclusive judges of the facts. You are to find from the evidence which facts have been proved and which facts have not been proved.
Defendant objected and requested the court instruct the jury that reasonable doubt as to defendant’s guilt could arise out of lack of evidence. The court refused.
As defendant notes, the charge in this case is identical to that found to constitute reversible error in State v. Vessell, 450 So.2d 938 (La.1984). However, a defendant may not seek retroactive application of a “new rule” of constitutional law to his case. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In general a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. Id., 109 S.Ct. at 1070.
This issue of instruction to the jury as to reasonable doubt and lack of evidence was addressed in State v. Davis, 154 La. 295, 97 So. 449 (1923). The court found the following instruction, considered as a whole with the general charge as to reasonable doubt, (which is markedly different from the general charge herein), to be legal and sufficient:
A reasonable doubt is a doubt reasonably arising from the failure of the evidence to convince the minds of the jury. It reasonably arises from the failure of the evidence introduced upon the trial of the case.
The issue of instruction as to lack of evidence was also raised in State v. Ferguson, 240 La. 593, 124 So.2d 558, cert den. 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1960).
The Louisiana Supreme Court noted the trial judge’s general charge as to reasonable doubt:
“This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence.
[[Image here]]
“If, after giving a fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory upon any one single point indispensably necessary to constitute the defendant’s guilt, this would give rise to a reasonable doubt such as would justify you in rendering a verdict of not guilty”. (Emphasis ours.)
The court noted the trial judge also instructed the jury that is was to confine itself to a dispassionate consideration of the evidence and not resort to extraneous facts and circumstances in reaching a verdict. These two charges are identical to those given in the instant case. However, the Ferguson court further instructed the jury that:
If, on the other hand, any reasonable view of the evidence shows that the defendant is not guilty, or the evidence leaves a reasonable doubt of guilt, then you should acquit.
Ferguson, 124 at 573.
The instruction in State v. Henderson, 362 So.2d 1358 (La.1978), decided subsequent to the present defendant’s conviction, was also substantially similar to the one in the instant case. The reviewing Court noted that the general charge failed to instruct the jury straightforwardly that the defendants were entitled to the benefit of reasonable doubt based on the lack of evidence. The Court found however that the instructions given substantially complied with the legislative intent of La.C.Cr.P. art. 804. The instruction given in Henderson was also given in the instant case and in Ferguson, supra. The Henderson court did note that reading of Article 804 would have been preferable and that “future use of the general charge used in the instant case could easily result in reversible error. See, State v. Gibbs, 355 So.2d 1299 (La.1978).” Henderson, supra, 362 So.2d at 1366. (Emphasis added).
*1292 The cases cited above clearly indicated that at the time of defendant’s 1974 conviction, the instruction given by the trial judge did not constitute reversible error, although reading the exact language of Article 804 to the jury was the instruction preferred by the Supreme Court. It was not until State v. Mack, 403 So.2d 8 (La. 1981) that the Court held that reading of the exact language of La.C.Cr.P. art. 804 that reasonable doubt may arise out the lack of evidence in a case is mandatory, and that failure to read those words constituted reversible error. Mack, supra, and its progeny, relied upon by defendant herein announces a “new rule” because the result in those cases was not dictated by precedent existing at the time this defendant’s conviction became final. See Skelton v. Whitley, 950 F.2d 1037,1043 (5th Cir.1992).
In Skelton, the defendant sought retroactive application of State v. Cage, 583 So.2d 1125 (1991) to his 1975 conviction.[1] The Skelton court concluded that the rule announced in Cage was a new rule and therefore non-retroactive. The court noted that the Louisiana Supreme Court “had more or less consistently upheld virtually identical jury instructions from constitutional attack” prior to the U.S. Supreme Court decision in Cage.[2] Similarly, at the time of the conviction of defendant herein, the Louisiana Supreme Court had consistently upheld jury instructions virtually identical to those in defendant’s case. The cases relied upon by defendant announce a new rule and are therefore non-retroactive in application.
This assignment of error is without merit.
BURDEN OF PROOF ON SELF-DEFENSE
A defendant in a homicide prosecution who asserts that he acted in self-defense does not bear the burden of proof on that issue because the State bears the burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La.1982). Defendant claims that the trial court failed to so instruct the jury and argues such failure constitutes reversible error.
The trial court instructed the jury in part in the general charge that the state must prove defendant’s guilt beyond a reasonable doubt, and the defendant is not required to prove his innocence but may rest upon the presumption of innocence in his favor until it is overthrown by positive affirmative proof.
The court subsequently instructed the jury extensively on self-defense, then stated that the State must negate the defense of self-defense.
It also appears that the court gave the requested instruction that the State must prove beyond a reasonable doubt that the homicide was committed feloniously and not in self-defense.
Accordingly, for the foregoing reasons defendant’s conviction and sentence are hereby affirmed.
AFFIRMED

. The Cage instruction, which defined reasonable doubt as one giving rise to "great uncertainty” and one that would make you feel morally uncertain as to defendant's guilt,” is included in its entirety in the instruction at issue herein.

. Cage v. Louisiana, — U.S. -, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), on remand, 583 So.2d 1125 (La.1991), cert. den. — U.S. -, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).