JiDOUCET, Chief Judge.
On April 1, 1996, the Defendant, Robert Duhon Haley, was charged by bill of information with possession, with intent to distribute, of cocaine, a violation of La.R.S. 40:967(A)(1). In open court, defense counsel waived presence of the Defendant and entered a plea of not guilty on his behalf. On September 10, 1996, jury selection began. During the proceedings, the defense moved for a mistrial. The trial court granted the defense’s motion. A second jury trial was scheduled. It was conducted on March 18 and 19, 1997. The Defendant was found guilty, by an eleven to one vote, of attempted possession of cocaine with intent to distribute, a violation of La. R.S. 14:27 and 40:967(A)(1). On May 29, 1997, the trial court sentenced the Defendant to serve twelve years at hard labor. The trial court also revoked the |2Pefendant’s probation on a prior drug conviction, made the five year hard labor sentence imposed for the prior conviction executory, and stipulated that sentence would run concurrently with his present sentence. On the same day, in open court, the Defendant filed a Motion to Reconsider Sentence. The trial court denied the motion. The Defendant appeals asserting three assignments of error.
FA CTS:
Based on information from an informant, sheriffs deputies went to the Old Soularie Station on South Main Street in Jennings, Louisiana, on February 13, 1996, to investigate possible illegal narcotics activities. The deputies encountered three men standing near a parked vehicle. Two men successfully fled the scene. However, the deputies apprehended the third man, the Defendant. During the struggle with one of the deputies, the Defendant threw a matchbox to the ground. The matchbox contained fourteen rocks of crack cocaine.

ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there is one such error.
The record indicates the trial court did not give the Defendant credit toward service of his sentence for time he spent in actual custody prior to the imposition of the sentence. Thus, this court amends the sentence to reflect that the Defendant is given credit for time he served prior to the execution of the sentence, the case is remanded and the district court ordered to amend the commitment and minute entry of the sentence to reflect credit for time served in conformity with La.Code Crim.P. art. 880. See La. Code Crim.P. art. 882(A) and State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858.
I ^ASSIGNMENT OF ERROR NO. 1:
By this assignment, the Defendant contends the evidence presented at trial was insufficient to support his conviction. The Defendant was convicted of attempted possession of cocaine with intent to distribute. With respect to the crime of possession of cocaine with intent to distribute, La.R.S. 40:967(A) provides:
[I]t shall be unlawful for any person knowingly or intentionally:
*994 (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II; ...
La.R.S. 14:27 describes attempt as:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; ...
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt....
The Defendant does not contest the fact that a matchbox containing fourteen rocks of crack cocaine was found at the crime scene. Principally, he argues that the State did not present sufficient evidence to link him to the cocaine. Sheriffs Deputies Danny Semmes and William Kettler testified at trial and gave essentially the same account of the events leading up to the Defendant’s arrest.
On February 13, 1996, Deputy Semmes received information concerning illegal narcotics activity at the Old Soularie Station on South Main Street in Jennings, Louisiana. At approximately 8:30 p.m., he and Deputy Kettler drove to that location in an unmarked vehicle, and discovered parked vehicles and three men standing in thej^yieinity of one of the parked vehicles. Deputy Kettler stated that he approached a gold Cadillac which was occupied by a female. Deputy Semmes stated he recalled two vehicles at the scene but could not recall if one of the vehicles was a gold Cadillac. Deputy Semmes approached the other vehicle, a gray car, where the three men were standing. According to the deputies, the Defendant was leaning inside the window of the second vehicle. Both deputies stated that they were familiar with the Defendant prior to his arrest. Deputy Semmes testified that he recognized the Defendant and heard the Defendant say “this is some good dope.” The Defendant allegedly had a hand extended inside the vehicle as he made the comment. As Semmes neared the vehicle, the other two men who were standing nearby fled the scene. Semmes grabbed the Defendant and wrestled him to the ground. According to Deputy Semmes, the Defendant then threw an object from his hand; however, Semmes could not identify the object at the time it was thrown. Deputy Kettler stated he saw a matchbox leave the Defendant’s hand and fall to the ground within three feet of his position. He immediately walked over to the matchbox and picked it up. Fourteen rocks of crack cocaine were discovered in the matchbox. The Defendant resisted the deputies’ efforts to secure his custody, and the deputies were forced to use pepper mace to incapacitate the Defendant. While the deputies subdued the Defendant, the two vehicles drove away. The deputies were unable to obtain the license plate numbers of the fleeing vehicles. No other suspects were apprehended or arrested in connection with the incident. No other drugs or paraphernalia, nor weapons or cash were found at the scene.
Although the matchbox was not tested for fingerprints, Deputy Kettler testified that he unmistakably saw the Defendant throw the matchbox, the matchbox never left Kettler’s sight, and it was not possible that one of the other suspects threw the |smatchbox. According to Deputy Kettler, he and Deputy Semmes were aided in their vision by the headlights of their vehicle, their flashlights, and nearby street lights.
Victor Raphael testified on behalf of the Defendant. Raphael was the employer of the Defendant’s mother and also employed the Defendant part-time. He and the Defendant’s mother were romantically involved. He stated that he came upon the arrest scene as the deputies were leaving their vehicle. At the scene, Raphael allegedly saw one other vehicle, a white car, which sped away as the deputies approached, and three men other than the Defendant and the deputies, *995 who fled the scene after the deputies apprehended the Defendant. At some point, Deputy Semmes and the Defendant began struggling and fell to the ground. Raphael stated the deputies maced and handcuffed the Defendant and, as Deputies Semmes and Kett-ler held the Defendant down, he heard the deputies repeatedly asking the Defendant “where is the dope?”
Since the jury found the Defendant guilty of attempted possession of cocaine with intent to distribute, they apparently believed the testimony of Officers Semmes and Kett-ler rather than the defense witness. Similar facts existed in State v. Veazie, 96-419 (La.App. 3 Cir. 11/6/96); 684 So.2d 34, 36-37. A police officer witnessed the defendant drop a matchbox which was later discovered to contain crack cocaine. This court reviewed the evidence as follows:
Officer Todd Chaddick of the Lake Charles Police Department testified that on September 25, 1994, Chaddick was patrolling north Lake Charles in a marked unit. Around 10:30 p.m., the officer saw three individuals standing on the corner of Magnolia Street and O’Brien Street. The officer became suspicious when the three immediately turned and started walking away once they saw the police ear.
When Veazie and another gentleman crossed the street, they passed in front of the officer’s unit. The officer testified that as Veazie was walking toward the next intersection, Veazie acted as if he was stretching, throwing something. The officer stated that he clearly saw something 16leave Veazie’s hand and land in a yard. Before stopping the defendant for littering, the officer “stopped the unit, got out, checked the matchbox, hollered at him [the defendant] to stop, that I wanted to talk to him, at which time I opened the matchbox and I saw the two rocks of crack cocaine in there. He never did stop.” Officer Chad-dick called for backup, and when it arrived the officer was able to stop Veazie and place him under arrest.
At trial, Chaddick identified the matchbox and two rocks of crack cocaine that he collected from the arrest scene. Also, the officer identified Veazie as the person who had thrown down the matchbox; the officer testified the other man who was with Veazie definitely had not thrown down the matchbox....
The defense in Veazie presented only one witness, an investigator, who had been sent at night to take pictures of the crime scene and who testified regarding the poor nighttime lighting at the scene. On cross-examination, the witness admitted that a street light was located at the scene, and that he did not photograph the spot where the matchbox was found nor did he take any photos while facing the direction that the officer had been facing the night of the defendant’s arrest. In rebuttal, Officer Chad-dick testified that he saw the defendant and the two other men clearly through the aid of the headlights of his vehicle and the nearby street light. He also stated that he used his flashlight to find the discarded matchbox. This court affirmed the defendant’s conviction after concluding sufficient evidence was presented to support the conviction. See also State v. Cooper, 93-863 (La.App. 5 Cir. 3/16/94); 635 So.2d 301 (the defendant’s conviction for attempted possession of cocaine was upheld, when evidence presented at trial established that a police officer witnessed the defendant throw an object from his hand and that object was later identified as a matchbox containing crack cocaine.)
In the present case, the testimony of Deputies Semmes and Kettler was sufficient to establish beyond, a reasonable doubt that the Defendant possessed the cocaine in question. Furthermore, based on the quantity of crack cocaine found, fourteen rocks, Land the circumstances surrounding the Defendant’s arrest, a rational juror could have also concluded that the Defendant intended to distribute the cocaine. See State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.), writ denied, 609 So.2d 222 (La.1992). In sum, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3:

By this assignment, the Defendant asserts that the trial court erred by granting certain hearsay objections made by the State during the testimony of defense witness, Victor Raphael. Mr. Raphael’s excluded testimony was proffered by the defense.
*996 Raphael stated that, approximately thirty minutes after the crime, a man came into Raphael’s place of business (a pool hall) “cussing [Deputy] Danny Semmes out.” The man allegedly said “he [Semmes] made me lose my ... shut” and “I thought he was after me and he was after Robert [presumably meaning the Defendant].” Raphael stated the man was referring to a matchbox containing fourteen rocks of crack cocaine which he had thrown down, presumably at the arrest scene. Although Raphael stated he knew the identity of the man, Raphael refused to disclose his identity.
• The Defendant argues that the statements were admissible based on the hearsay exceptions for present sense impression and/or excited utterance. With respect to these hearsay exceptions, La.Code Evid. art. 803 provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition....
With respect to the present sense impression exception, the supreme court has stated:
|gAs McCormick explains, a present sense impression is “confined to ‘describing or explaining’ ” an event or condition perceived by the speaker. McCormick On Evidence Sec. 298. The critical factor is whether the statement was made while the individual was “perceiving” the event or “immediately thereafter.” L.C.E. art. 803(1); McCormick on Evidence Sec. 298. The statement may follow “immediately” after perceiving an event, allowing only for “the time needed for translating observation into speech.” McCormick on Evidence Sec. 298.
Buckbee v. United Gas Pipe Line Co. Inc., 561 So.2d 76, 84 (La.1990). See also State v. Brown, 618 So.2d 629 (La.App. 2 Cir.), writ denied, 624 So.2d 1222 (La.1993).
In State v. Reaves, 569 So.2d 650, 653 (La.App. 2 Cir.1990), writ denied, 576 So.2d 25 (La.1991) (alteration in original), the Second Circuit explained the excited utterance exception as follows:
LSA-C.E. Art. 803 sets forth numerous exceptions to the hearsay rule, one being an excited utterance, defined as ‘[a] statement relating to a startling event or condition made while the* declarant was under the stress of excitement caused by the event or condition.’ LSA-C.E. Art. 803(2). This exception requires an occurrence or event sufficiently startling to render an observer’s normal reflective thought processes inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989).
Of the many factors that enter into determining whether a declarant was under the stress of an exciting event, probably most important is the time factor. The trial court must decide whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Additional factors which may indicate that a statement was the result of reflective thought, but do not automatically justify exclusion, are as follows: evidence that the statement was self-serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the event and into past or future facts; and proof that, between the event and the statement, the declarant performed tasks requiring reflective thought processes. State v. Henderson, supra.
See also State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197, writ denied, 96-1126 (La.10/4/96); 679 So.2d 1379.
|9The Defendant’s proffer of the evidence is insufficient to support his claims that the statements fell within one or both of these exceptions to the hearsay rule. The only *997 circumstance relevant to such an inquiry which was revealed in the proffer referred to the time of the alleged statements, thirty minutes after the crime. No information was provided concerning the actions of the de-clarant between the time of the crime and the time of these statements. We find the Defendant failed to meet his burden in establishing that the statements fell within one of these exceptions.
Raphael, the defense witness, refused to reveal the declarant’s identity. Thus, even if it could be said that the statements were either present sense impressions or excited utterances, the statements were otherwise unreliable because the identity of the declar-ant was unknown. La. Code Evid. art. 804(A) provides a hearsay exception where a declarant is unavailable. However, the Defendant failed to make such a showing in this ease. Furthermore, Raphael had a close personal relationship with the Defendant. Mr. Raphael was the Defendant’s alleged employer and he also maintained a romantic relationship with the Defendant’s mother. Thus, the trustworthiness of Raphael’s testimony was highly suspect. See State v. Dabney, 91-2051 (La.App. 4 Cir. 3/15/94); 633 So.2d 1369, writ denied, 94-0974 (La.9/2/94); 643 So.2d 139.
Based on the foregoing, we find the trial court did not err in excluding the statements. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2 :
In this assignment, the Defendant contends his sentence is excessive. He was sentenced to serve twelve years at hard labor for attempted possession of cocaine with intent to distribute. The applicable sentencing range for that crime was not less than two and one-half years nor more than fifteen years at hard labor, and a fine of not more than twenty-five thousand dollars. La.R.S. 40:967(B)(1); 40:979(A).
lioAt the Defendant’s sentencing hearing, the trial court articulated its reasons for sentence, as follows:
The pre-sentence report indicates that you are twenty-three (23) years of age, born on April 25th, 1974, are- presently single, having never been married, and that you have a minor daughter, age twenty-two (22) months, and a child on the way, due in October. You have completed the ninth grade in school, having quit school during your tenth year, at the age of eighteen (18).
The pre-sentence report states that you do not have a juvenile record, but that — it does set forth in detail your criminal record as an adult, beginning in November of 1991. I will not go over your criminal record, but I am going to file the pre-sentence report into the record for further reference, if necessary. It should be noted, however, that this is your second drug-related felony conviction and that at the time of the occurrence of this offense, February 13th, 1996, you were on probation for the conviction of distribution of cocaine.
[[Image here]]
In reviewing the pre-sentence investigation, the Court takes note of the fact that you had a somewhat unstable childhood and has taken this into consideration in mitigating against imposition of the maximum sentence in this matter. However, the Court can find no other mitigating factors.
At the age of twenty-three (23), you already stand convicted twice of felony drug-related offenses and have demonstrated by your actions that you are not a good candidate for probation. Although the evidence introduced at trial established that the detectives both observed and overheard you in the course of a drug transaction, you will deny any involvement in the crime of which you stand convicted. Your lack of remorse and your unrepentant attitude demonstrate to this Court that you cannot live in society and that this community must be protected from you. You are certainly in need of correctional treatment in a custodial environment for a significant period of time. Anything less would deprecate from the seriousness of your offense, would not promote respect for the law and would not provide.a just punishment for the crime of which you stand convicted. Although you are only twenty-three (23) years of age, you have demonstrated a total disregard for this *998 community and its laws and have chosen to support yourself by preying upon your fellow citizens through the sale of drugs. This Court has an obligation to protect the public from you and will do so by removing you from society.
Your past criminal record and the lack of any stabilizing influences in your life convinces the Court that you will not turn away from your life of crime. Despite opportunities to correct your behavior, you have Incontinued to be involved in drug activity, supporting your lifestyle by inflicting misery on others through the sale of drugs. You have obviously become accustomed to the easy money and cavalier lifestyle that trafficking in drugs provides and have no concern for the pain that you cause others through your activities.
Your calloused attitude was demonstrated at the close of your trial. After the jury had returned its verdict, you were observed removing a large roll of cash from your sock and handing it to your mother. This, after claiming that you have no financial means of supporting yourself and after using the services of a court-appointed attorney. Further, you make reference to your daughter, that you don’t want to be away from her, but the Court is aware that you have made little or no effort to support or otherwise provide for her well-being. It is obvious to this Court that your relationship to your daughter is one that revolves around your convenience and not her best interest.
Thereafter, the trial court sentenced the Defendant to serve twelve years at hard labor. The court also revoked the Defendant’s probation on a prior conviction for distribution of cocaine, made the five year hard labor sentence on the prior conviction executory, and ordered that the sentence on the prior conviction run concurrent with the present sentence.
The Defendant argues on appeal that the trial court did not consider his young age as a mitigating factor. Although the court did not specifically characterize his age, twenty-one at the time of the crime, as a mitigating factor, the court did note the Defendant’s age at sentencing. The Defendant also asserts that the trial court improperly considered prior charges which had been dismissed. However, the sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, i.e., hearsay and records of arrests as well as convictions. State v. Myles, 94-0217 (La.6/3/94); 638 So.2d 218.
The Defendant also objects to the trial court’s observation that he had a “calloused attitude” because, after the verdict was returned, he was seen removing a | i2large roll of cash from his sock and handing it to his mother. The court noted that the Defendant had claimed indigence and utilized a court-appointed attorney. This incident was not an improper consideration, as apparently in the court’s opinion it displayed a contempt or lack of respect for the judicial system and suggested that the Defendant had committed perjury. See Myles, 638 So.2d 218.
In sum, we find the trial court adequately complied with La.Code Crim.P. art. 894.1. Furthermore, based on the record, we also find the trial court did not err in its sentencing choice. Thus, this assignment, likewise, lacks merit.

CONCLUSION:

Accordingly, the Defendant’s conviction is affirmed. Defendant’s sentence is amended to reflect that the Defendant is given credit for time served and the case is remanded to district court to amend the commitment and minute entry to reflect such credit. In all other respects, his sentence is affirmed.
AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.